UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,            )
                                     )
        v.                            )    No. 03 CR 991-1
                                     )
CARLTON MCINTOSH,                     )    Judge Rebecca R. Pallmeyer
                                     )
                Defendant.            )

                       **MEMORANDUM OPINION AND ORDER**

        In 2005, Defendant Carlton McIntosh was convicted of escaping from federal custody and sentenced to a prison term of 41 months, to be followed 3 years of supervised release. In November 2009, this court determined that McIntosh had violated the terms of his supervised release and sentenced him to an additional prison term of 16 months, to be followed by an additional 12 months of supervised release. McIntosh contends the sentence was unlawful and asks the court to reduce the term of incarceration to 5 months. For the reasons explained below, the court concludes the additional custody sentence was neither unlawful nor improper, but will reduce the duration of the additional supervised release McIntosh must serve.

                              **BACKGROUND**

        Following a bench trial in March 2005, Carlton McIntosh was convicted under 18 U.S.C. § 751(a) of escaping from a community correctional center where he was completing a term of imprisonment for money laundering.[1] The escape statute carries a maximum penalty of five years

---

[1] Already then, McIntosh was no stranger to the criminal justice system. A partial account of his criminal history is set out in *United States v. McIntosh*, 198 F.3d 995, 997-98 (7th Cir. 2000). Briefly, in March 1997, McIntosh was serving a sentence for a bank fraud conviction, out of the U.S. District Court in St Louis, at a federal prison facility in Duluth, Minnesota. Under the Interstate Agreement on Detainers, federal officials released McIntosh to the custody of the State of Illinois to face state forgery charges. McIntosh pleaded guilty to those charges and was sentenced to time served, but Illinois officials inadvertently released McIntosh rather than returning him to federal custody. McIntosh did not immediately surrender to federal authorities, but instead evaded capture for more than a month. During that period, he engaged in a check kiting scheme
(continued...)

(60 months) imprisonment. 18 U.S.C. § 751(a). Judge James Moran of this court sentenced McIntosh to a term of 41 months in prison, running concurrently with McIntosh's prior sentence, to be followed by a three-year (36-month) term of supervised release.[2] (Judgment, Ex. A to Def.'s Mot.; D.E. 73) McIntosh initially began serving his supervised release in September 2006, but by May 2007, he had violated his release conditions. Judge Moran determined that McIntosh had committed a crime while on release; had failed to cooperate with or report to his Probation Officer; had failed to obtain regular lawful work; and had left the judicial district without permission. (Judgment for Revocation, D.E. 110.) The court revoked McIntosh's release and ordered him imprisoned for an additional 14 months, to be followed by a consecutive term of 22 months of supervised release, pursuant to 18 U.S.C. § 3583. (Id.) McIntosh served 14 months in prison and began his term of supervised release in June 2008.

In August 2009, the Government again moved for revocation of McIntosh's term of supervised release, and the court held a hearing on this matter on November 25, 2009. At the conclusion of the hearing, the court revoked McIntosh's release for a second time. (*See* Judgment, D.E. 136.) The court found, by a preponderance of the evidence, that McIntosh had associated with persons engaged in criminal activity; had committed a crime while on release; and had failed to address his restitution obligations, all in violation of the terms of his supervised release. (*Id.*) The Government's evidence demonstrated that, among other violations, McIntosh had fraudulently

---

[1](...continued)
in which he withdrew over $38,000 from fraudulently opened checking accounts. McIntosh used the proceeds of the scheme to purchase a 1994 Mercedes automobile, which he was driving when he was ultimately apprehended. McIntosh pleaded guilty to a charge of money laundering before Judge David Hamilton, then a judge of the U.S. District Court for the Southern District of Indiana. Judge Hamilton sentenced McIntosh to 78 months in prison to be followed by three years of supervised release. While serving his sentence on the money laundering conviction, McIntosh escaped from federal custody, subsequently resulting in his conviction under 18 U.S.C. § 751(a) before Judge Moran.

[2] Though Judge Moran imposed the 41-month sentence in March 2005, he indicated that the sentence was to run from September 26, 2003.

obtained a driver's license and a debit card under a false name and had used the documents to rent a car. McIntosh was stopped and arrested while in possession of the rental vehicle, which had been reported stolen by the rental company, but failed to report the arrest to his probation officer. The court ordered McIntosh to serve 16 months in prison for his violations, followed by another additional supervised release period of 12 months. (Amended Judgment, D.E. 137.) The court expected McIntosh to surrender to federal law enforcement authorities on January 8, 2010, but he failed to do so, and the court issued a bench warrant. McIntosh had fled the jurisdiction by the time he was apprehended on February 3, 2010, and has been in federal custody since that date.

In multiple motions, McIntosh asks the court to reconsider its judgment and sentence, specifically, by reducing the term of his reimprisonment from 16 months to five months. For the reasons explained below, the motion is denied, but the court will alter its prior order with regard to the duration of McIntosh's additional supervised release in conformity with the requirements of Section 3583(h). McIntosh will be required to serve 16 months in prison, followed by six months of supervised release.

## **DISCUSSION**

Section 3583(e)(3) governs the revocation of a defendant's supervised release from federal custody and the terms of his reimprisonment. The statute permits a sentencing court to require that a defendant serve all or part of his assigned supervised release in prison if the court finds, by a preponderance of the evidence, that the defendant violated the terms of his release. 18 U.S.C. § 3583(e)(3). In this case, the court has found serious violations and revoked McIntosh's release on two separate occasions. McIntosh's underlying crime of escape from federal custody is a Class D felony[3] and, thus, Section 3583(e)(3) authorizes the court to impose a term of up to two years of

---

[3] The parties' briefs reflect confusion on this point. At different points in its briefing, the Government inconsistently refers to escape as a Class B, Class C, and Class D felony. (Gov't Resp., at ¶ 2; Gov't Sur-Reply at 1-2.) Defendant is similarly contradictory, alternately stating both
(continued...)
3

imprisonment upon any single revocation of release.  Pursuant to Section 3583(h), the court may also require that McIntosh be again placed on supervised release after he has served his term of reimprisonment.  18 U.S.C. § 3583(h).

The statutory authority bestowed upon the court by Section 3583 is subject to a single limitation: The court may not impose a combined sentence of reincarceration and supervised release that is longer than the maximum term of supervised release authorized for the original crime.  *See United States v. Russell*, 340 F.3d 450, 454 (7th Cir. 2003) (citing *Johnson v. United States*, 529 U.S. 694, 705-06 (2000)); *see also United States v. Clark*, 305 Fed. Appx. 295, 296 (7th Cir. 2008).  This limitation is made explicit in the text of Section 3583(h) itself: "The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."  18 U.S.C. § 3583(h). Judge Moran initially sentenced McIntosh to a three-year term of supervised release for his felonious escape from custody, the maximum term available for a Class D felony under 18 U.S.C § 3583(b).  Hence, the combined duration of McIntosh's reimprisonment and any additional supervised release that this court may impose under Section 3583(h) may not exceed a total of 36 months.

McIntosh makes two separate arguments in support of his request that the court reconsider

---

[3](...continued)
that he is "informed and believes that escape is a Class B" felony and that "[e]scape is either a Class C or D felony." (Def.'s Reply at ¶ 2; Def.'s Mot. at 2.)  The distinction is potentially important because, under Section 3583(e)(3), a violation of release on a Class B felony can be punished by up to three years of imprisonment, while a similar violation of release on a Class C or D felony is only punishable by up to two years of imprisonment.  As the court reads the federal sentencing laws, escape from federal custody carries a maximum available sentence of five years imprisonment, which makes it a Class D felony under the federal sentencing classifications. 18 U.S.C. § 751(a); 18 U.S.C. §3559(a); *United States v. Cotroneo*, 89 F.3d 510, 513 (8th Cir. 1996).

4

his sentence. First, he contends that the court should reduce the term of his reimprisonment to account for the 14 months that he spent in prison following the first revocation of his release in May 2007. Second, McIntosh argues that the court erred in imposing a 16-month term of reimprisonment because the sum of his initial imprisonment (41 months) and his subsequent prison terms for release violations (14 months and 16 months, respectively) exceeds the 60-month maximum sentence for escape under 18 U.S.C. § 751(a). The court addresses both of these arguments in turn.

### A. McIntosh's Prior Imprisonment

Defendant McIntosh initially requested that his sentence be reduced by the entire time that he had previously spent on supervised release. After the Government referred Defendant to the relevant Seventh Circuit precedent on this issue, however, McIntosh conceded that he was not entitled to any credit for time spent on supervised release prior to revocation. (Def.'s Reply, at ¶ 6.); *See United States v. Eskridge*, 445 F.3d 930, 933 (7th Cir. 2006) ("When, as in this case, supervised release is revoked and the defendant reimprisoned, he gets no credit for time previously served on supervised release.") The *Eskridge* rule makes good sense. It would substantially strip revocation of its power to sanction if a prisoner were rewarded with credit for the time he spent violating the terms of his supervised release. McIntosh's remaining sentence will not be reduced to account for the months that he spent on supervised release prior to May 2007 and November 2009. As he concedes, he is entitled to no credit for these periods.

Nevertheless, McIntosh continues to urge that his *reimprisonment* must be reduced to account for the 14 months that he spent in prison beginning in May 2007. As already noted, the term of imprisonment for a violation of supervised release is controlled by Section 3583(e)(3), which imposes a 2-year statutory cap on the term of imprisonment that this court may order for McIntosh's violation. McIntosh argues that his previous 14-month imprisonment should be aggregated with his current term of 16 months against the statutory cap. The resulting 30-month total, McIntosh argues,

exceeds the cap and mandates that his custody sentence be reduced by at least six months. McIntosh's argument overlooks, the language of Section 3583(e)(3), which permits the court to impose a term of up to two years in prison "on any such revocation" of his release. 18 U.S.C. 3583(e)(3). That language, added by Congressional amendment in 2003, makes "clear that Congress intended to ensure that a district court is no longer required to reduce the maximum term of imprisonment to be imposed upon revocation by the aggregate length of prior revocation imprisonment terms." *United States v. Knight*, 580 F.3d 933, 937 (9th Cir. 2009). Among the Courts of Appeals that have considered this issue, the overwhelming consensus is that a defendant is not entitled to aggregate his prior terms of imprisonment for the purposes of Section 3583(e)(3). See *United States v. Tapia-Escalera*, 356 F.3d 181, 188 (1st. Cir. 2004) (statutory cap "applies afresh" to each revocation sentence); *United States v. Lewis*, 519 F.3d 822, 824 (8th Cir. 2008) (the 2003 amendment "abolished the requirement that revocation prison terms be aggregated for purposes of § 3583(e)(3)"); *United States v. Williams*, 425 F.3d 987, 989 (11th Cir. 2005) ("statutory caps explicitly apply to each revocation of supervised release"). As these cases make clear, the two-year statutory cap imposed by Section 3583(e)(3) applies only with regard to the court's most recent revocation of McIntosh's release.[4] Thus, the court's decision to return McIntosh to prison for 16 months does not exceed its statutory authority. With respect to Section 3583(e)(3), McIntosh is entitled to no credit for the time that he served in prison following his previous violations. The court stands by its determination that he must serve 16 months in custody.

Unlike the statutory provision governing *reimprisonment*, however, Section 3583(h), which

---

[4] As far as the court is aware, the Seventh Circuit has not yet had occasion to interpret the 2003 amendment to Section 3583(e)(3). Changes in this area typically take a relatively long time to reach the Court of Appeals because amendments do not apply retroactively and revocation of release is treated as part of the penalty for the original offense, meaning the law at the time of the original offense (not the violation) controls. See *Johnson,* 529 U.S. at 700-02. In this case, the amended version of Section 3583(e)(3) was in effect when McIntosh committed his underlying crime. *See* P.L. 108-21, Sec. 101 (*Eff. Date*: April 30, 2003).

6

articulates the maximum term of *additional supervised release*, is determined on a cumulative basis. As stated earlier, Section 3583(h) limits the length of any additional term of supervised release to "the term of supervised release [authorized for the original offense], *less any term of imprisonment* that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h) (emphasis added). Courts have consistently interpreted this language to encompass "the prison term in the current revocation sentence together with all the prison time served under any prior revocation sentence(s)." *United States v. Brings Plenty*, 188 F.3d 1051, 1054 (8th Cir. 1999); *See also United States v. Maxwell*, 285 F.3d 336, 341 (4th Cir. 2002) ("[T]he plain meaning of the phrase 'less any term of imprisonment . . .' is that the prison term in the current revocation sentence, together with all prison time imposed under any prior revocation sentence or sentences, must be aggregated."); *United States v. Vera*, 542 F.3d 457, 461-62 (5th Cir. 2008) (Aggregation requirement of Section 3583(h) was unchanged by 2003 amendments to the Act). The maximum allowable term of supervised release for McIntosh's original offense of escape is 3 years. Accordingly, the aggregation of McIntosh's previous 14-month imprisonment, his current sentence of 16 months, and the additional term of supervised release may not exceed 36 months in total. This court erred, therefore, when it previously imposed a 12-month term of additional supervised release, as the total duration of this release and the two terms of McIntosh's imprisonment would have been 42 months (six months more than the statute authorizes). A reduction in the period of additional supervised release is therefore warranted. Accordingly, upon the completion of his 16-month term of imprisonment, McIntosh will be required to serve just six months of additional supervised release, rather than the 12 months that the court previously ordered.

  **B.**  **McIntosh's *Apprendi* Challenge**

  In *Johnson v. United States*, the Supreme Court stated that a post-revocation penalty for a violation of supervised release should be attributed to the defendant's original conviction rather than treated as a separate penalty for a separate offense. 529 U.S. at 699-701. To do otherwise,

the Court concluded, would raise "serious constitutional questions" since violations need only be found by a judge under a preponderance of the evidence standard. *Id.* McIntosh relies on this language in contending that his current sentence violates the rule, enunciated in *Apprendi v. New Jersey*, that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466, 490 (2000). According to McIntosh, the court erred when it imposed a 16-month term of reimprisonment after his violation because the sum of his initial imprisonment (41 months) and his subsequent prison terms for release violations (14 months and 16 months, respectively) would exceed the 60-month maximum sentence for escape under 18 U.S.C. § 751(a). The court may not impose such a sentence, McIntosh urges, where a jury has not found him guilty of the violation beyond a reasonable doubt.

McIntosh's argument fails to recognize that the court's statutory authority to impose a period of reincarceration for a violation of supervised release comes not from 18 U.S.C. § 751(a) alone, but from the interaction of that statute and 18 U.S.C. § 3583. Properly understood, McIntosh's escape conviction carried a maximum immediate prison term of five years under 18 U.S.C. § 751(a), to be followed by a three-year term of supervised release, 18 U.S.C. § 3583(b), *which might include an additional possible reincarceration* of up to two years for any violation of McIntosh's release, 18 U.S.C. § 3583(e)(3). Because the penalties contemplated by 18 U.S.C. § 3583 are included within McIntosh's initial conviction, the revocation of his supervised release does not impose any punishment that the original conviction and sentence did not authorize. *See United States v. Johnson*, ___F.3d___, 2009 WL 3735883, *6 (6th Cir. 2009).[5] The revocation of McIntosh's supervised release and the Court's statutorily-authorized requirement that McIntosh serve some portion of his release period in prison does not run afoul of the *Apprendi* rule.

---

[5] Though the cases raise similar issues and the defendants share a common name, *United States v. Johnson*, ___F.3d___, 2009 WL 3735883, *6 (6th Cir. 2009) is not related to the case of a similar name that the Supreme Court considered, *Johnson v. United States*, 529 U.S. 694 (2000).

McIntosh cites no authority for his argument that *Apprendi* or its progeny render the application of a penalty authorized under 18 U.S.C. § 3583 unconstitutional. In fact, while the Supreme Court has yet to directly address the applicability of *Apprendi* in the supervised-release framework, the Court has strongly hinted that it views existing supervised release practices in the federal courts to be entirely consistent with the Constitution. *See United States v. Booker*, 543 U.S. 220, 258 (2005) (Section 3583's supervised release provisions are "perfectly valid" under *Apprendi's* requirement). Every Circuit to address this issue in the years since *Apprendi* was decided has concluded that 18 U.S.C. § 3583 remains permissible as applied in the context of supervised-release revocations and reimprisonment, even when resulting terms of incarceration exceed the statutory maximum of the underlying offense. *See, e.g., Johnson*, 2009 WL 3735883 *5 (collecting cases); *United States v. Work,* 409 F.3d 484, 490 (1st Cir. 2005) ("We think it follows ineluctably that any term of incarceration authorized under the supervised release statute is not limited by reference to the actual term of incarceration served by a defendant pursuant to the substantive criminal statute applicable to the crime of conviction. Several of our sister circuits have passed upon this question and their decisions are in accord with this analysis.") (citing, *inter alia, United States v. Colt*, 126 F.3d 981, 982 (7th Cir. 1997)).

Our own Court of Appeals squarely addressed this issue in *Colt*, 126 F.3d at 982. In that case, the defendant was initially sentenced to a seven-month prison term for a misdemeanor that carried a 12-month statutory maximum sentence. After serving his initial prison term, the defendant violated the terms of his supervised release and was returned to prison for an additional nine months, resulting in a total imprisonment of 16 months, four months more than the statute authorized for the underlying crime. The Seventh Circuit upheld the entire sentence, holding that the additional term of incarceration was authorized separately by 18 U.S.C. § 3583. *Id.* at 982-83. McIntosh points out that the Seventh Circuit decided *Colt* prior to the Supreme Court's decisions in *Johnson* and *Apprendi*, but this court sees no reason to suspect that the holdings in those cases,

for some reason, should alter the result in *Colt*. Nor, apparently, does the Seventh Circuit, which has continued to rely on *Colt* as governing precedent. *See., e.g., United States v. Kelley*, 446 F.3d 688, 691 (7th Cir. 2006); *United States v. Kizeart*, 251 Fed. Appx. 352, 354 (7th Cir. 2007).

The authority of this Circuit and others eviscerates McIntosh's constitutional argument. The revocation of supervised release is not an additional court-imposed penalty that offends the constitution. Rather, it is an alteration of the defendant's original sentence, explicitly contemplated and authorized by federal statute, based on a defendant's inability to comply with the terms of his release.[6] What's more, even if this court were sympathetic to McIntosh's constitutional argument (which it is not), it would be bound to follow *Colt,* as the governing applicable authority. If the precedent of a superior court has direct application in a given case but is called into question by some other line of decisions, the lower court will follow the directly controlling authority and leave to the higher court the prerogative of overruling its own decisions. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989); *see also Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (a lower court is obligated to follow the decisions of a higher court unless it is "powerfully convinced" that the higher court would rule otherwise at the first opportunity.)

McIntosh's incarceration is authorized under 18 U.S.C. § 3583 and does not violate the Constitution. The court declines to reduce McIntosh's term of reimprisonment.

## **CONCLUSION**

Defendant's motions to reconsider [132, 139, 148] are denied. McIntosh is ordered to serve

---

[6] As the Government also points out, McIntosh's argument would have as its ultimate consequence the result that any defendant sentenced to the maximum term of imprisonment for his underlying crime would subsequently be free to violate the terms of his supervised release with impunity. By McIntosh's logic, such a prisoner could not be returned to prison for his violations. This potential result is impossible to square with Congress's intent in passing 18 U.S.C § 3583 to allow district courts to use "discretionary judgment to allocate supervision to those releasees who need[] it most." *Johnson*, 529 U.S. at 709. McIntosh's argument would render supervised release a toothless sanction, an outcome unsupportable under any reasoned view of the existing law.

the entire remaining duration of his 16-month term of imprisonment. The court further orders that, following the completion of his term of imprisonment, McIntosh be placed on supervised release for a period of six months, rather than the 12 months the court previously imposed.

ENTER:

Dated: April 7, 2010

REBECCA R. PALLMEYER
United States District Judge